UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

THE SAUFLEY STATION COOPER, LLC,
a Delaware limited liability company,

    Plaintiff,

v.                                Case No.

WINN-DIXIE MONTGOMERY
LEASING, LLC, a Florida limited liability
company, and WINN-DIXIE STORES, INC.,
a Florida corporation,

    Defendants.
_____/

## COMPLAINT

Plaintiff, The Saufley Station Cooper, LLC ("**Saufley Station**"), sues Defendants Winn-Dixie Montgomery Leasing, LLC ("**Winn-Dixie Leasing**") and Winn-Dixie Stores, Inc. ("**Winn-Dixie Stores**"), alleging the following:

### General Allegations

1. This a complaint for damages exceeding $75,000.00 and there is complete diversity of citizenship between the parties. Accordingly, there is jurisdiction in this Court pursuant to 28 U.S.C. § 1332. In addition, venue is appropriate in this District because a substantial part of the events or omissions

giving rise to the claim occurred in this District and the Leased Premises (as defined herein) that are the subject of this lawsuit are located in this District.

2. Saufley Station is a Delaware limited liability company authorized to do business in Florida.

3. Saufley Station is the successor in interest to Saufley Field Partners Ltd., an Alabama limited partnership ("**Saufley Field**"), the original landlord under that certain Lease Agreement dated September 8, 1998 (the "**Lease Agreement**") by and between Saufley Field, as landlord, and Winn-Dixie Montgomery, Inc., a Kentucky corporation ("**Winn-Dixie Montgomery**"), as tenant, for the real property and improvements located at 5975 Mobile Highway, Pensacola, Florida, and identified as Store #495 (the "**Leased Premises**"). A true and correct copy of the Lease Agreement is attached hereto as **Exhibit 1**.

4. Winn-Dixie Leasing is a Florida limited-liability company.

5. Winn-Dixie Leasing is the successor in interest to Winn-Dixie Montgomery, the original tenant under the Lease Agreement.

6. Winn-Dixie Stores is a Florida corporation.

7. Winn-Dixie Stores executed that certain Corporate Guaranty of Lease Obligations dated September 8, 1998 (the "**Corporate Guaranty**"), in favor of Saufley Field and its successors and assigns for the account of Winn-

Dixie Montgomery and its successors and assigns. A true and correct copy of the Corporate Guaranty is attached hereto as **Exhibit 2**.

8. Saufley Station has engaged Stichter, Riedel, Blain & Postler, P.A. to represent its interests in this action and is obligated to pay its attorneys a reasonable fee.

9. Under the Lease Agreement, attorneys' fees and costs are a measure of damages for which Winn-Dixie Leasing may be held liable. Specifically, Section 23(c) of the Lease Agreement states that "Tenant shall pay to Landlord . . . as Additional Rent all expenses incurred by Landlord . . . in connection with any Event of Default or the exercise of any remedy by reason of any Event of Default, including reasonable attorneys' fees and expenses."

10. Unless noted otherwise, this complaint adopts the meanings of all capitalized terms used in the Lease Agreement and the Corporate Guaranty.

## Count 1
## Breach of Lease Agreement

11. Saufley Station incorporates the general allegations of paragraphs 1 through 10 above.

12. As successor to Winn-Dixie Montgomery, Winn-Dixie Leasing is the Tenant under the Lease Agreement.

3

13. In 2018, Saufley Station engaged Peach State Roofing ("**PSR**") to inspect the roof of the Leased Premises.

14. On or about February 7, 2018, PSR inspected the roof at the Leased Premises and subsequently provided for Ted Cooper, Saufley Station's manager, its Management Report (the "**PSR Management Report**") detailing the status of the roof at the Leased Premises, its recommended repairs and Alterations and the prices for such repairs and Alterations. A true and correct copy of the PSR Management Report is attached hereto as **Exhibit 3**.

15. Subsequently, Saufley Station provided the PSR Management Report to Winn-Dixie Leasing.

16. On or about November 19, 2018, PSR provided to Saufley Station its proposal for re-roofing the Leased Premises (the "**PSR Re-Roofing Proposal**"). A true and correct copy of the PSR Re-Roofing Proposal is attached hereto as **Exhibit 4**.

17. Subsequently, Saufley Station provided the PSR Re-Roofing Proposal to Winn-Dixie Leasing.

18. On or about April 30, 2019, Winn-Dixie Leasing vacated the Leased Premises and took the position that the Lease Agreement was terminated.

19. Because Winn-Dixie Leasing failed to maintain the Leased Premises in safe condition and good repair except for ordinary wear and tear, on or about

July 6, 2021, Saufley Station paid RR Restoration LLC $1,100,910.87 to replace the roof of the Leased Premises and complete additional work and repairs associated therewith. A true and correct copy of RR Restoration LLC's invoice to Saufley Station for the aforementioned roof replacement and associated work and repairs is attached hereto as **Exhibit 5**.

20. The Lease Agreement provides, in Section 8(b), that the Tenant is to "maintain the Leased Premises in safe condition, and in good repair . . . except for ordinary wear and tear". Further, Section 8(b) states specifically that "Landlord shall not be required to maintain, repair or rebuild the Leased Premises, any part, system or component thereof, in any way, and Tenant hereby expressly waives the right to make repairs or Alterations at the expense of Landlord pursuant to any Legal Requirement now or hereafter in effect."

21. The Lease Agreement provides, in Section 8(e), that upon the completion of any inspection of the Premises and determination by Landlord "that repairs or Alterations are necessary," the "cost of all such work" shall be paid by Tenant to Landlord as Additional Rent, "together with interest thereon at the Default Rate from the time of demand for payment by Landlord . . . to Tenant".

22. Further, Section 21 of the Lease Agreement requires that the Tenant, "at its sole cost and expense," "pay, protect, indemnify, save and hold harmless Landlord . . . from and against any and all liabilities, losses, damages, penalties,

costs, expenses (including reasonable attorneys' fees and expenses), . . . arising in or about the Leased Premises during the Term . . . whether or not arising from . . . any Claims" or "any Default under this Lease."

23. Section 5(c) of the Lease Agreement requires that the Tenant "pay and discharge when the same shall become due as additional rent (the "Additional Rent"), all other amounts and obligations which Tenant assumes or agrees to pay or discharge pursuant to this Lease, together with every fine, penalty, interest and cost which may be added for nonpayment or late payment thereof".

24. In addition, Section 6(a) of the Lease Agreement states that "Basic Rent, Additional Rent and all other sums payable by Tenant hereunder shall continue to be payable in all events and that the obligation of Tenant hereunder shall continue unaffected for any reason, unless the requirement to pay or perform the shame shall have been terminated pursuant to an express provision of this Lease."

25. Winn-Dixie Leasing owes Saufley Station the damages identified in paragraph 19, above, as Additional Rent, together with Default Rate interest from the time of demand for payment.

26. Despite counsel for Saufley Station's written demand to Winn-Dixie Leasing dated September 14, 2020 (the "**Demand Letter**"), Saufley Station has not received any payment from Winn-Dixie Leasing for its breach of the Lease

Agreement as alleged in this complaint. A true and correct copy of the Demand Letter is attached hereto as **Exhibit 6**.

27. Winn-Dixie Leasing's failure to pay the amounts set forth in paragraph 19 constitutes a breach and an Event of Default as specified in Sections 22(a)(1) and 22(a)(2)(A) of the Lease Agreement.

28. Further, as more specifically addressed in Count 2, below, Winn-Dixie Store's default under the Corporate Guaranty constitutes a breach and an Event of Default under Section 22(a)(2)(G) of the Lease Agreement.

29. Upon the occurrence of an Event of Default, Saufley Station is entitled to exercise the remedies set forth in Section 22(b) of the Lease Agreement, including, without limitation, to "cure such default for the account of Tenant, and any amount paid or any contractual liability incurred by Landlord in so doing shall be deemed paid or incurred for the account of Tenant. Tenant agrees to reimburse Landlord such amount and indemnify Landlord from and against any and all liability arising from Landlord's cure."

30. Pursuant to Section 22(c) of the Lease Agreement, "[n]o expiration or termination of this Lease, or repossession or reletting of the Leased Premises . . . shall relieve Tenant of any of its liabilities and obligations hereunder, including the liability for payment of Basic Rent, Additional Rent and all other sums

payable hereunder, all of which shall survive such expiration, termination, repossession or reletting."

31. Winn-Dixie Leasing breached the Lease Agreement and Saufley Station suffered damages as a result thereof.

32. All conditions precedent to filing this cause of action have occurred or been waived.

WHEREFORE, the Court should enter judgment against Winn-Dixie Leasing for damages, interest, attorney's fees, costs, and any other amounts due under the Lease Agreement, and grant all other relief that this Court finds proper.

## Count 2
## Breach of Corporate Guaranty

33. Saufley Station incorporates the general allegations of paragraphs 1 through 32 above.

34. The Corporate Guaranty is a valid contract.

35. By the Demand Letter, Saufley Station notified Winn-Dixie Stores of Winn-Dixie Leasing's monetary and non-monetary defaults under the Lease Agreement and demanded payment from Winn-Dixie Leasing.

36. Pursuant to Section 2.(a) of the Corporate Guaranty, the Guarantor shall, "following ten (10) days written notice from Landlord, cure such monetary default(s) of Tenant to the extent that Tenant does not have a right, under the

Lease, to offset any amount due to Landlord because of any default by Landlord under the Lease." With regard to nonmonetary defaults, pursuant to Section 2.(b) of the Guaranty, the Guarantor shall, "following thirty (30) days written notice from Landlord, cure such nonmonetary default(s) of Tenant . . ."

37. More than thirty (30) days have passed since Saufley Station provided the aforementioned written notice in the form of the Demand Letter and Winn-Dixie Leasing has still failed to cure the defaults described in the Demand Letter.

38. By executing the Corporate Guaranty, Winn-Dixie Stores guaranteed Winn-Dixie Leasing's performance under the Lease Agreement on an absolute, continuing, and unlimited basis.

39. Winn-Dixie Stores breached the Corporate Guaranty and Saufley Station has suffered damages as a result thereof.

40. All conditions precedent to filing this cause of action have occurred or been waived.

4852-3762-0206, v. 9

WHEREFORE, the Court should enter judgment against Winn-Dixie Stores for damages, interest, attorney's fees, costs, and any other amounts due under the Corporate Guaranty and grant all other relief that the Court finds proper.

*/s/ Edward J. Peterson*
Edward J. Peterson (FBN 0014612)
Stichter, Riedel, Blain & Postler, P.A.
110 E. Madison Street, Suite 200
Tampa, Florida 33602-4718
Telephone: (813) 229-0144
Email:      epeterson@srbp.com
Attorneys for Plaintiff

4852-3762-0206, v. 9